First oral argument of Sutt for today is Heaple v. Sutt, 523-0725. Mr. Whitney? Thank you. May it please the court, counsel, good morning, your honors. Richard Whitney representing the defendant appellant Jerry Sutt. Your honors, we presented two issues in this appeal, but the second issue of whether post-trial counsel for Mr. Sutt was ineffective is admittedly a variation of our principal argument, which is whether the state's and the trial court's repeated use of the word victim to describe the complaining witnesses from the voir dire through the closing argument was so patently unfair and prejudicial as to constitute structural error. And if the court will indulge me for just a moment, I think I can summarize our argument in the form of an analogy. Currently, the world's fastest man is a man named Noah Lyle, who won the Paris Olympic gold in the 100 meter dash in just under 9.8 seconds. Now, if I were to challenge Noah Lyle to a 100 meter race, I am, to put it mildly, unlikely to win. The odds would be maybe a million to one or greater. But suppose that we hold the race and Noah Lyle takes off before the starting pistol is fired and grabs a 20 meter lead before the race even begins and then I lose. That race and that result would not be legitimate. It doesn't matter that he would have won anyway. The race was fundamentally unfair because he jumped the gun and I would have to be given another chance. That, in a nutshell, is structural error and that is this case. The state had a lot of evidence against Mr. Sutt and he had a very far-fetched defense. The odds of him getting an acquittal with that defense may be comparable to the odds of me beating Noah Lyle in a 100 meter dash. But that does not matter because the trial in this case was fundamentally unfair. The state and the court, however inadvertently, jumped the starting gun when they repeatedly described the complaining witnesses, BM and SP, as victims, especially in the case where the defense was that he was there but that the assaults never happened. This was unfair prejudice by definition. They prejudged the case against Mr. Sutt by telling the jury there was already a fact that these witnesses were victims before the jury heard all the evidence and began to deliberate. The fact that an individual claims injury or some kind of crime committed against them, just generally, is that enough to be a victim under the IPI? Well, I think it depends on the nature of the case. And I know you're referring to the IPI. There is a statutory definition but that was never shared with the jury. But in a case, for example, well like Wasman, for example, where there was a spring gun, somebody was shot and killed, okay, obviously they were a victim of the bullet. They were a victim in that sense. In this case, where the defense is that yes, I was there, but the crime never occurred. That's the defense. Right. But what about the claim by the individuals that they were the alleged victims, if you will? Right. Of a criminal sexual abuse? Well, then that's exactly what they were, alleged victims. They are making the allegation that this happened to them and that's the state's evidence. Does the term victim generally, is that okay to use in a sexual abuse case? It would be if the, or it could be, if the defense was, you know, yes, excuse me, yes the assault occurred but I was not the one who did it. It's a case of mistaken identity. You got the wrong person. In that case, where there's no disputing that a sexual assault occurred, that would be a different situation. But in this case, that's not what we have here. The defense here was that I was there, but the assault never occurred. And that's a comparable set of facts to the set of facts that the Connecticut Supreme Court and the Oregon Supreme Court and some of the other cases we cited, where the court's determination was in a situation like that, where the very commission of the offense is at issue. That's where it becomes unfairly prejudicial to announce to the jury that yes, these people were victims. How do you distinguish people versus surname then? Which? Surname. Z-E-R-N-A-M. Well, it's not so much a case of distinguishing it as a matter of basically Zernel was erroneously decided. And as I argue in the briefs, it was an outlier case. For one thing, the Zernel court relied on the statutory definition of victim in sexual assault cases. But if that there's a statute out there that says, well, victim means alleged victim, but the jury has never told this, it doesn't cure the prejudice. So that was, I think, one error made by the court. The Zernel court also ignored its own district precedent, and the, what's the, Anderson and some other cases dissuade you. And then it also erred in concluding that there was no case law to support the claim that the use of the word victim by the state could constitute prejudicial error. And, of course, we cited numerous cases where courts have made, in fact, that very determination. And then the case is distinguishable in one other important respect. And that is, in this case, it was not just the state and the state witnesses. It referred to S.P. and B.M. as themselves during voir dire. And obviously when you have, this makes a profound difference because the court, of course, presents itself as the neutral, presumably neutral, arbiter in the case, the referee, if you will, and the authoritative source of the law in the case, the jury's instruction act. They take a note to follow the court's instructions. So when the court itself is announcing, yeah, they're victims, which it did three times during the voir dire, well, this has, I think, a greater impact and a more profound impact than just the state making that allegation. Well, is any of that cured by the admonishments the court gives to the jury with regard to you must find that he's been proven guilty beyond a reasonable doubt, blah, blah, blah? Does that not somewhat alleviate any terms that are being used to describe the party? Well, that does occur in every case. It is a mitigating factor, but I don't think it can overcome the, you know, the announcement over 20 times in this case that they were in fact victims. You could say, well, they have to prove their case, they have to prove the evidence, but if the jury has also been told that, well, this particular fact's already been decided because we know they're victims, I don't think that does a sufficient mitigating impact, Your Honor. I'm not sure who you or the state tallied up the number of times the word was used or the term was used, but I believe the state has a different number than you do in terms of how many times the state's attorney used the term victim and even the court. Is that? I wouldn't say that in the state's brief or I don't recall that in the state's brief. You know, anyone can do a PDF word search and the truth can be readily determined. I will say that in the count that I provided to the court, I deliberately left out some more innocuous uses of the term. For example, I think there was a nurse that was talking about victims in general, and I wasn't counting those, but on my count, it was used three times by the court, six times by the prosecutors, including in closing argument, and 13 times by a total of five different state witnesses. So it was fairly pervasive, which is another factor that I think distinguishes this case from cases like Wasmund and the other cases in Illinois where courts have basically said, well, it could be unfairly prejudicial under some set of circumstances, but we don't have that here. In this case, we do have it. This could be the poster child case for this argument, I think, especially where you have the court involved. Mr. Whitney, the Supreme Court recently, in the recent past, has talked about structural error and how difficult it is to prove that. Can you address how this could rise to the level of structural error? Yes. Obviously, no complete argument is made in the brief, but we are proceeding under the third type of structural error, an error that always results in fundamental unfairness, and I think the closest analog from the U.S. Supreme Court would be the Sullivan v. Louisiana case where the failure to give a reasonable doubt instruction is structural because it doesn't have a jury. This is similar in that it's interfering with the truth-finding function to say that, well, this is a fact that's already been determined for you, so you don't have to worry about that. They are victims. This invades the province of the jury as another way of looking at it. That's basically what this is. I think there are some other analogs. We cited to the Phillips case, for example, out of the 1st District. Structural error was found where the trial court wrongfully equated reasonable doubt with significant doubt during the four years. That, again, is similar. Then you have the court giving kind of an erroneous misdirection to the jury or incorrect direction. You also have the Richardson case out of the 2nd District where the trial court's failure to grant a motion for a mistrial after the court gave a prim instruction, jury said it couldn't reach a unanimous agreement. That was structural error. I would submit that something like what happened in Richardson was far less serious than what happened here where it went directly to the truth-finding mission of the jury as well as amounted to really vouching for witnesses where you have the various state witnesses in the court saying these are victims. That's essentially vouching for the testimony of SP and BM, which is another one of the grounds here. I think if you look at Weaver v. Massachusetts, this, I think, clearly falls into that third category. It's like the analogy I gave to the court at the beginning. It's fundamentally unfair. It doesn't matter. It shouldn't matter. This should not go to harmless error analysis for that reason. In Weaver v. Massachusetts case and most of, I believe, all of the cases you cite here are out-of-state cases, does Illinois have any cases to support your position with regard to sex crimes and the use of the word victim? Not directly, Your Honor. Again, we cited several cases where the court basically, including the Wasserman case by this court, where the court has said in a certain set of circumstances it could be unfairly prejudicial. But there's none that says directly in Illinois that directly supports our position. In the Wasserman case, it doesn't specify what conditions, just that in certain conditions it could be. Yes, that's correct. But the differences between this case and Wasserman are many. In Wasserman, you know, the state sometimes used alleged victim. This partially mitigated it. The state clarified its position in closing argument. The court was not involved in describing the complaining witnesses as victims. So there's numerous differences between that in this case and Wasserman, which is why we argue that in a sense Wasserman in a roundabout way actually supports our position because the differences here were so extreme. Your Honor, as if the court has no further questions, I would respectfully request that this court enter an order requesting, reversing the denial of Mr. Sutt's post-trial motion vacating his conviction and remanding this clause for a new trial. Thank you, Your Honor. Thank you, Mr. Whitney. Questions? No. Thank you. You'll have a few minutes after Mr. Marshall. Mr. Marshall? State your Honor. May it please the Court, Mr. Whitney? I have four brief points I'd like to make. If you have any questions, please feel free to jump in. The first point is in defense of trial counsel. On appeal defense, it seems to suggest that these out-of-state cases would have been cited as persuasive authority, that the rulings might have gone differently. Not only are they not binding, however, trial counsel presented to the trial court the underlying policy considerations. Said, hey, this is too prejudicial. This is invading the province of the jury. Trial courts should have disagreed. So I've had motions where they complain about being called a defendant, I look at it like that. I do not find it is an inherently prejudicial term. So I'm not sure counsel could have done much to dress up his argument. Relatedly, as a matter of strategy, if counsel was aware of People v. Zernell, it might have been better off just to argue the policy and not open up the research trail because the state's position that Zernell authorizes and anticipates that the word victim will be used in sex offence cases. The second point I'd like to make touches on something Justice Barberis was referencing. I'm not sure if Oregon, Connecticut, I don't know if they have rule 431B equivalent. But here, jurors are peppered with 431B. They're also given the substance of 2.02 and 203. Trial court made some additional comments emphasizing the presumption of innocence. You're talking about a jury instruction 2.01, 2.03? Yes, ma'am. IPI, sorry. So it's the state's position that even though the defendant would have preferred that it be specifically qualified every time it was used, alleged victim, alleged victim. By the time the trial started, it was almost implicitly qualified as alleged victim because we're going to call her the victim, but remember, I've told you six times, he's innocent of the charges. The state has to prove his guilt. Third point, jurors are given the definition of criminal sexual assault, IPI 11.55 and includes the word victim. Now, for whatever reason, I'm not sure why the defendant opted to represent himself at trial. He did not request that the jury receive IPI 11.65F, which would have defined victim as a person alleging to have been subjected to a sex offense. You've got to write off his strategy because he's held the same standard as counsel. Let's pretend that he didn't fire his attorney and his attorney was there. His attorney might have convinced the trial court, hey, during the barbeer, could you maybe slip in this 11.65 for me? I'm not sure the trial court would have accommodated that. If they hadn't have, in opening statement, he still could have said, you're going to be instructed later that a victim is just a person alleging. So keep that in mind with the presumption of innocence and all that stuff. So he could have probably headed off all the alleged prejudice that the defendant complains of on appeal, hypothetically. Are you arguing he was an effective defendant? No, I'm arguing counsel can only blame himself for some of this prejudice because he could have avoided it. The defendant represented himself and didn't request that instruction be given at all. Did he outstand by counsel? I don't recall. The way I saw it, counsel filed pre-trial motions, he discharged him for whatever reason. After he was found guilty, counsel came back. Okay. So the definition of the crime in this case uses the word victim. Yes, ma'am. And so It's kind of hard to avoid the use of the word, isn't it? It seems to me that when you use the definition of the crime itself and you have an instruction that says he's innocent until proven beyond a reasonable doubt, that it's very difficult to divorce yourself from the term victim since it's part of the crime. But that also favors Mr. Whitney's argument that you're presupposing there's a victim when the defense is that the crime never occurred. Well, with the sex offenses, and I don't know why the legislature, I mean, obviously probably because of the way the crime reads and the way the instructions read. Instructions are always going to name or reference a victim. So perhaps they said, well, maybe we should give a special definition for victim right there. And all the others, I think in the unlawful restraint here, it always has that blank. You fill in Pat Daly as the victim or whoever. But I'm not sure why they wouldn't have just, I don't know, I'm not going to speak for the legislature or look for any kind of inconsistency in what they might do with respect to one thing or another. Sorry. Fourth and final point is the nature of structural errors, as Justice Cates was referencing. They are rare to limited class. You've got overwhelming evidence here. I don't see, even if assuming that it was error, not to qualify the word victim, that it screwed up the whole framework of the trial. And it would require an automatic reversal and a presumption of prejudice. So if there are any questions, I would just ask that you deny the defendant's request for a new trial. There are no questions. Thank you for your time. All right. Mr. Whitney. Briefly, Your Honor. First of all, to answer the court's question, Mr. Sutt did not have standby counsel. I believe he requested, but it was denied. With respect to opposing counsel's first argument regarding our ineffective assistance counsel claim directed against post-trial counsel, the trial court said specifically the reason it rejected the motion in limine was because it couldn't find any cases that would support the defense position. That's why it was ineffective assistance of counsel to not raise this and call the court's attention to this array of case law that actually did support the defense's position. Therefore, I think it does support our second issue that post-trial counsel wasn't effective. Opposing counsel then goes again to the same question that Your Honor posed about, well, the general curative instructions. The state has to prove its case beyond a reasonable doubt. The defendant is presumptively innocent. The reason the jury instructions, those particular instructions, can't cure the type of harm that occurred here is that what is the jury going to think? They're going to think, all right, the state has to prove its case, but this particular fact has already been proven. It's not like the state and the court were saying, yes, the state has to prove its case, but we've already found him guilty. It's not something that extreme. But what the court and the state witnesses did was say, they are victims. Therefore, the assault happened. Therefore, the unlawful restraint happened. And that doesn't leave a whole lot for the jury to decide. Really, it only leaves it to decide, well, who was the perpetrator then, right? And there was nobody else other than Mr. Sutt. Mr. Sutt admitted he was there. There was no question that he was present at the time of the alleged offenses. So it really took away his only real defense. With that, I think that basically answers the principal state arguments. But if the Court has any further questions. Justice Bowen? No questions. Okay. Thank you, Mr. Whitney. Thank you, Your Honors. All right. That concludes the argument in 5.075. We'll take the matter under advisement and issue a new court.